# CV 15          4642

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

EVELYN CRAMER and KENJI WEBB,

       Plaintiffs,

  -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, HON. WILLIAM BRATTON,
Commissioner of the New York City Police Department,
POLICE OFFICER ALICIA COMMISSO, POLICE OFFICER
BRYANT VILLEGAS, SERGEANT "JOHN" BOYCE (actual
name unknown, in the employ of Defendant NYPD on May 11,
2014 and assigned to the 103rd Precinct), SERGEANT "JOHN"
CHANG (actual name unknown, in the employ of Defendant
NYPD on May 11, 2014 and assigned to the 103rd Precinct),
SERGEANT "JOHN" HAMBURGER (actual first name
unknown, in the employ of Defendant NYPD and assigned
to the 103rd Precinct), POLICE OFFICER "JOHN" MARION
(actual first name unknown, in the employ of Defendant NYPD
and assigned to the 103rd Precinct), POLICE OFFICERS
JOHN DOES No. "1" through "10" (actual names unknown,
indicating various Police Officers in the employ of Defendant
City on May 11, 2014, May 17, 2014, May 19, 2014 and
May 23, 2014 and assigned to the 103rd Precinct),

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

FILED
CLERK

2015 AUG -7  PM 3: 03

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

COMPLAINT

Docket No.

THE PLAINTIFFS
DEMAND A JURY
TRIAL ON ALL ISSUES



POHORELSKY, M.J.

  The Plaintiffs, Evelyn Cramer and Kenji Webb, by their undersigned attorney, Matthew

A. Kaufman, Esq., do state and say as and for their Complaint:

## JURISDICTION

1.  The jurisdiction of this Court is invoked by the Plaintiff pursuant to Title 28 of the

United States Code, Sections 1331, 1343(3) & (4) and 1367.

2.  Venue is properly laid in the Eastern District of New York under 28 U.S.C.

§1391(b):

a.   The claims arose in this District; and,

b.   The Plaintiffs reside in this District.

## JURY DEMAND

3.   Plaintiff demands a trial by jury on all issues pursuant to the Seventh Amendment to the United States Constitution and Fed. R. Civ. P. 38.

## NATURE OF PROCEEDINGS

4.   This is a proceeding for compensatory and punitive damages owing to the Plaintiff as a result of violations of Civil Rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and under Federal law, particularly Title 42 of the United States Code, Section 1983. Supplemental claims are also asserted against Defendants pursuant to 28 U.S.C. § 1367.

## PARTIES

5.   The Plaintiff, Evelyn Cramer is a resident of Queens County, City and State of New York.

6.   The Plaintiff, Kenji Webb is a resident of Queens County, City and State of New York.

7.   The Plaintiff, Evelyn Cramer, at all times material hereto, is a person of African-American descent with dark skin.

8.   The Plaintiff, Kenji Webb, at all times material hereto, is a person of African-American and Indian descent with dark skin.

9.   Defendant City of New York [hereinafter referred to as "City"]:

-2-

a. At all times material hereto is a Municipal Corporation, duly formed and created pursuant to the laws and statutes of the State of New York.

b. At all times material hereto, Defendant City, by its agents, servants and employees, as well as by Defendant New York City Police Department [hereinafter "NYPD"] and was responsible for the training and instruction of individuals employed by Defendant NYPD.

10. Defendant William Bratton is the Commissioner of Defendant NYPD at all times material herein, and is sued here in his representative capacity as the Commissioner of Defendant NYPD [hereinafter referred to as "Bratton"].

11. Defendant Police Officer Alicia Commisso [Tax Reg. No. 954660] at all times indicated herein, is a Police Officer in the employ of Defendants City and/or NYPD on May 11, 2014 and assigned to the "Patrol Boro Queens South" [hereinafter, "P.O. Commisso"].

12. Defendant Police Officer Bryant Villegas [Tax Reg. No. 954406] is a Police Officer in the employ of Defendants City and/or NYPD on May 11, 2014 [hereinafter, "P.O. Villegas"].

13. Defendant Sergeant "John" Boyce (actual first name and shield number unknown) at all times indicated herein, is a Sergeant in the employ of Defendants City and/or NYPD and was assigned to the 103rd Precinct on May 11, 2014 [hereinafter referred to as "Sgt. Boyce"].

14. Defendant Sergeant "John" Chang (actual first name and shield number unknown) at all times indicated herein, is Police Sergeant in the employ of Defendants City and/or NYPD on May 11, 2014 and assigned to the 103rd Precinct [hereinafter referred to as "Sgt. Chang"].

-3-

15.     Defendant Sergeant "John" Hamburger (actual first name unknown and shield number unknown) at all times indicated herein, is a Sergeant in the employ of Defendants City and/or NYPD and assigned to the 103rd Precinct [hereinafter referred to as "Sgt. Hamburger"].

16.     At all times material herein, Defendant Police Officer "John" Marion (actual first name unknown and shield number unknown) was assigned to the 103rd Precinct, and is a Police Officer in the employ of Defendants City and/or NYPD [hereinafter referred to as "P.O. Marion"].

17.     Defendants Police Officers "John Does No. '1' through '10'" (actual names and shields unknown) at all times indicated herein, are various Police Officers in the employ of Defendants City and/or NYPD May 11, 2014, May 17, 2014, May 19, 2014 and May 23, 2014 and assigned to the 103rd Precinct [hereinafter referred to as "P.O. John Does Nos. '1' to '10'"].

18.     The Plaintiff, Evelyn Cramer has complied with all conditions precedent under New York Law:

a.      On August 1, 2014, the Plaintiff, Evelyn Cramer, served and filed a Notice of Claim upon Defendants in full compliance with Section 50-e of the N.Y. General Municipal Law, **Exhibit "A"**;

b.      Prior to the commencement of this action at least 30 days have elapsed since the service of the said Notice of Claim pursuant N.Y. General Municipal Law § 50-e, and the and adjustment or payment has been neglected and/or refused.

c.      The Supplemental State claims in this action is timely commenced within one-year and 90-days after the happening of the events herein pursuant to N.Y. General Municipal Law Section § 50-i.

19.     The Plaintiff, Kenji Webb has complied with all conditions precedent under New

York Law:

a.      On August 1, 2014, the Plaintiff, Kenji Webb, served and filed a Notice of
        Claim upon Defendants in full compliance with Section 50-e of the N.Y.
        General Municipal Law, **Exhibit "B"**;

b.      Prior to the commencement of this action at least 30 days have elapsed
        since the service of the said Notice of Claim pursuant N.Y. General
        Municipal Law § 50-e, and the and adjustment or payment has been
        neglected and/or refused.

c.      The Supplemental State claims in this action is timely commenced within
        one-year and 90-days after the happening of the events herein pursuant to
        N.Y. General Municipal Law Section § 50-i.

20.     Defendant Bratton is and was at all times responsible for the policies, practices

and/or customs of Defendant NYPD, a municipal agency of Defendant City.

Defendant Bratton is and was at all times relevant herein, responsible for the

hiring, screening, training, retention, supervision, discipline, counseling and

control of the Police Officers under his command who are or were employed by

Defendants City and NYPD, including the Defendants Police Officers herein. He

is sued in his official capacity as a policy maker.

21.     Defendant City is responsible, *inter alia*, for the management, administration,

conduct and supervision of all personnel employed by Defendant NYPD to protect

the safety of the public and the property of the public, such as the Plaintiff herein.

22.     Each and every act of Defendants alleged herein was done by Defendants, and

each of them as individuals, or through their employees, servants and/or agents,

under color and authority of the laws, statutes, ordinances, customs and usages of

the State of New York, the United States of America, and under their offices with the City of New York.

23.     All of the acts of the individual Defendants alleged herein were done while acting within the scope of their employment by Defendants City and/or NYPD.

24.     All of the acts of the individual Defendants alleged herein were done while acting in furtherance of their employment by Defendant City and/or NYPD.

25.     Hereinafter, Defendants Police Officer "John Does Nos. '1' through '10'" may be collectively referred to as the "Defendant Police Officers.

## BACKGROUND FACTUAL ALLEGATIONS

### A. May 2, 2014 Incident

26.     At all times material hereto, the Plaintiff, Kenji Webb resided at 123-27 Merrick Boulevard, County of Queens, City and State of New York.

27.     At all times material hereto, the Plaintiff, Kenji Webb was the owner of a 1999 four-door Ford Taurus, bearing New York State license plate number GMS 1295 [hereinafter referred to as "Plaintiff's Taurus"].

28.     On May 2, 2014, the Plaintiff's Taurus was parked on 164th Street, in the County of Queens, City and State of New York, across the street from the United States Post Office at 8840 164th Street.

29.     On May 2, 2014, as the Plaintiff was walking to the Plaintiff's Taurus, a white car with blue lettering indicating "NYPD" was driving on 164th Street opposite the Plaintiff's Taurus [hereinafter referred to as the "5/2/2014 Police Car"], when it crossed into the opposite lane of traffic and parked in front of the Plaintiff's Taurus.

30.     Three police officers exited from the "5/2/2014 Police Car", including Defendant Sgt. Hamburger, Defendant P.O. Marion and a third Police Officer [hereinafter collectively referred to as the "5/2/2014 Police Officers"].

31.     Before the Plaintiff even reached Plaintiff's Taurus, Defendant "5/2/2014 Police Officers" requested the Plaintiff to produce his driver's license and registration, which did.

32.     After examining the Plaintiff's license and registration, Defendant "5/2/2014 Police Officers" asked the Plaintiff if they could inspect and search the Plaintiff's Taurus, and the Plaintiff refused.

33.     Defendant "5/2/2014 Police Officers" did not have reasonable nor probable cause, nor a search warrant to authorize them to search the Plaintiff's Taurus.

34.     Upon the Plaintiff's refusal to permit Defendant "5/2/2014 Police Officers" inspect the Plaintiff's Taurus, Defendant Marion issued a Parking Summons to the Plaintiff [hereinafter referred to as the "5/2/2014 Summons"].

35.     At all times, the Plaintiff maintained his innocence.

36.     Thereafter, the Plaintiff appeared for a hearing on the "5/2/2014 Summons" at the New York City Parking Violations Bureau and it was dismissed.

**B. May 11, 2014 Incident**

37.  On May 11, 2014, the Plaintiff, Kenji Webb was operating Plaintiff's Taurus on 89th Avenue in the County of Queens City and State of New York and his brother, Wanji Webb was a passenger.

38.  On May 11, 2014, the Plaintiff stopped his motor vehicle by the curb at northeast intersection of 89th Avenue and 164th Street in the County of Queens, City and State of New York.

39.  On May 11, 2014, while the Plaintiff, Kenji Webb was sitting in the driver's seat of Plaintiff's Taurus by the curb at the Northeast corner of 164th Street and 89th Avenue in the County of Queens, City and State of New York.

40.  While the Plaintiff, Kenji Webb was stopped at the curb at the Northeast corner of 164th Street and 89th Avenue, he was approached by P.O. John Doe Nos. "1" to "3" along with Defendants P.O. Commisso and P.O. Villegas [hereinafter collectively referred to as the "Defendant 5/11/14 Arresting Officers"].

41.  "Defendant 5/11/14 Arresting Officers" ordered the Plaintiff, Kenji Webb to exit the vehicle, at which point the Plaintiff was placed under arrest him without reasonable or probable cause.

42.  "Defendant 5/11/14 Arresting Officers," while arresting the Plaintiff, forcibly grabbed him by the back of his neck, striking his body and face and throwing him physically around while using excessive force in placing handcuffs on his wrists behind his back so as to visibly injure his arms and wrists.

43. Defendant Sgt. Boyce was present at the scene while the Plaintiff, Kenji Webb was arrested and beaten by "Defendant 5/11/14 Arresting Officers."

44. Defendant Sgt. Boyce assisted and aided one or more of the "Defendant 5/11/14 Arresting Officers" by placing the Plaintiff in a choke-hold while a Caucasian police officer who was part of the "Defendant 5/11/14 Arresting Officers" put his hand into the Plaintiff's pocket, and removed the key to Plaintiff's Taurus.

45. Defendant Sgt. Boyce stood passively by without taking any action to prevent or otherwise stop the beatings and infliction of pain, as well as the unlawful arrest of the Plaintiff, Kenji Webb by the "Defendant 5/11/14 Arresting Officers."

46. Defendants "5/11/14 Arresting Officers," while continuing to use excessive and violent force against the Plaintiff, Kenji Webb, put him into a white van with blue lettering indicating it was owned and/or operated by Defendants City and/or NYPD [hereinafter referred to as a "Police Van No. 1"]

47. While the Plaintiff was in "Police Van No. 1", Defendant Police Officers continued to use violent and excessive force, and at one point, dragged the Plaintiff out of "Police Van No. 1" whereupon "Defendant 5/11/14 Arresting Officers" began to physically beat an strike the Plaintiff with violent and painful blows to his body and head before putting him back into the Police Van.

48. As a result of the physical and abusive conduct by "Defendant 5/11/14 Arresting Officers," the Plaintiff, Kenji Webb sustained physical cuts and bruises, bleeding above his right eye, as well as losing consciousness at various times.

49.   The Plaintiff complained to "Defendant 5/11/14 Arresting Officers" about the pain he was suffering to his wrists and forehead, but was ignored by the defendants.

50.   After a period of time,"Defendant 5/11/14 Arresting Officers" drove the Plaintiff to a Precinct in Queens but not the 103rd Precinct which was near the arrest.

51.   Upon the Plaintiff's arrival at the unknown Precinct, the Plaintiff was then transported directly to a different Precinct in Queens, which upon information and belief was the 102nd Precinct.

52.   Defendant Sgt. Chang joined the Plaintiff in the "Police Van No. 1" while he was being transported Plaintiff in handcuffs to the 102nd Precinct.

53.   While the Plaintiff was being transported to the 102nd Precinct, Defendant Sgt. Chang sat with the Plaintiff and violently and without cause or justifiable reason, grabbed and twisted the Plaintiff's manacled arms, unnecessarily with unreasonable placing pressure and twisting the Plaintiff's arms so as to inflict unnecessary and unjustifiable force, causing the Plaintiff to suffer severe and unnecessary pain and further injuring the Plaintiff's wrists.

54.   Upon the Plaintiff's arrival at the 102nd Precinct, the Plaintiff was then transported directly to a Queens General Hospital for medical treatment where Defendant Police Officers took a sample of the Plaintiff's blood without his consent.

55.   The after receiving medical treatment at the hospital, the Plaintiff was taken to Queens Central Booking.

56.   On May 12, 2014, Defendant P.O. Commisso signed a Complaint for the Criminal Court of the City of New York, County of Queens [hereinafter referred to as the

-10-

"May 11, 2014 Complaint"]. A true copy of the "May 11, 2014 Complaint" is annexed hereto as **Exhibit "C"**.

57.    Defendant Commisso charged the Plaintiff, in a Complaint with one (1) felony, three (3) misdemeanors and three (3) violations of the New York Penal Law.

58.    Defendant Commisso charged the Plaintiff in the Complaint with the crimes of:

a.    Assault in the Second Degree in violation of New York Penal Law Section 120.5 (3);

b.    Obstructing Governmental Administration in the Second Degree in violation of New York Penal Law Section 195.05;

c.    Resisting Arrest in violation of New York Penal Law Section 205.30;

d.    Operating a Motor Vehicle While Under Influence of Alcohol or Drugs in violation of New York Vehicle and Traffic Law Section 1192 (4);

e.    Unlawful Possession of Marihuana in violation of new York Penal Law Section 221.05; and

f.    Disorderly Conduct in violation of New York Penal Law Section 240.20 (1).

59.    The "May 11, 2014 Complaint" was assigned docket number 2014QN027614 by the Criminal Court of the City of New York for the County of Queens.

60.    Defendant Commisso made wilfully false and untruthful statements in the "May 11, 2014 Complaint" which she knew were untrue.

61.    Defendant Villegas made wilfully false and untruthful statements in the "May 11, 2014 Complaint" which he knew were untrue.

62.    On May 12, 2014, the Plaintiff Kenji Webb was taken before a Judge of the Criminal Court of the City of New York for the County of Queens.

63. On May 12, 2014, the Plaintiff Kenji Webb taken to APAR-3 of the Criminal Court of the City of New York for the County of Queens, at which time he was arraigned on the charges contained in the "May 11, 2014 Complaint."

64. On May 12, 2014, the Plaintiff, Kenji Webb was released form custody on his own recognizance by the Criminal Court of the City of New York, County of Queens.

65. On May 12, 2014, after the Plaintiff, Kenji Webb was released by the Criminal Court, he went to the 103rd Precinct in Queens and retrieved his motor vehicle.

66. At all times material herein, the Plaintiff, Kenji Webb did maintain his innocence of the charges against him.

67. As a result of the foregoing May 11, 2014 COMPLAINT, the Plaintiff was required to retain counsel to defend himself from the criminal charges made against him by the individual Defendant Police Officers.

68. As a result of the foregoing May 11, 2014 COMPLAINT, the Plaintiff was required to appear on numerous occasions in the Criminal Court of the City of New York for the County of Queens.

69. As a result of the foregoing May 11, 2014 COMPLAINT, the Plaintiff was required to defend himself before the Criminal Court of the City of New York for the County of Queens.

70. That neither reasonable nor probable cause existed for the individual Defendant Police Officers to arrest the Plaintiff.

71. That neither reasonable nor probable cause existed for the individual Defendant Police Officers to use any force against the Plaintiff.

72.   The individual Defendant Police Officers made statements and allegations against the Plaintiff with actual malice and disregard for the truth and the Plaintiff's rights under the Constitutions and laws of the U.S. and of the State of New York.

73.   The individual Defendant Police Officers made false and untruthful statements and allegations against the Plaintiff because they did not have probable or reasonable cause to believe the Plaintiff guilty of the crimes he was charged.

74.   The individual Defendant Police Officers conduct included, but not limited to the commission and subornation of perjury, to conceal from the Plaintiff and his counsel and from the Trial Court, the fact that the Defendant Police Officers had falsely accused the Plaintiff of the crimes he was charged.

75.   Upon information and belief, the individual Defendants Police Officers' conduct against the Plaintiff was a mere pretext to provide color to their conduct, including the arrest and use of physical force against the Plaintiff, Kenji Webb.

76.   The Plaintiff, Kenji Webb sustained physical injuries requiring medical treatment as well as emotional including, but not limited to discomfort, pain and suffering, mental anguish, fright, shock as a direct result of the aforementioned conduct by Defendant Police Officers, and other injuries.

77.   Neither reasonable nor probable cause existed for the Defendant Police Officers' conduct towards the Plaintiff herein.

78.   The Defendant Police Officers used excessive force against the Plaintiff, Kenji Webb without justification or cause.

-13-

79. Upon information and belief, these acts were especially committed against the Plaintiffs due to his race and color.

80. The Plaintiff, Kenji Webb sustained emotional and physical injury as a direct result of the aforementioned conduct by the Defendant Police Officers, including, discomfort, pain and suffering, mental anguish, fright, shock and other injuries.

**C. May 17, 2014 Incident**

81. On May 17, 2014, at approximately 1:59 p.m., the Plaintiff, Kenji Webb was operating Plaintiff's Taurus on 168th Street in front of 166-40 89th Avenue, between Archer Avenue to 89th Avenue in the County of Queens City and State of New York.

82. On May 17, 2014, at approximately 1:59 p.m., a police van [hereinafter "Police Van No. 2"] operated by Defendants Sgt. Hamburger and P.O. Marion, without reasonable nor probable cause, commenced following the Claimant along 168th Street in Queens, New York.

83. On May 17, 2014, as the Plaintiff drove north along 168th Street, he turned left onto 89th Avenue and "Police Van No. 2" continued following him.

84. On May 17, 2014, after several minutes, the Plaintiff brought his vehicle to a stop alongside a parked vehicle on the driver's side in front of 166-40 89th Avenue, Queens, New York in order to allow Police Van No. 2 pass him.

85. After the Plaintiff, Kenji Webb pulled his motor vehicle over to the side in front of 166-40 89th Avenue, Defendants Sgt. Hamburger and P.O. Marion stopped Police Van No. 2 alongside of the passenger's side of the Plaintiff's vehicle.

-14-

86. Defendants Hamburger and Marion exited from Police Van No. 2, approached the Plaintiff and requested he produce his drivers license.

87. The Plaintiff recognized Defendants Sgt. Hamburger and P.O. Marion, as a two officers who had previously stopped him on May 2, 2014.

88. Defendants Sgt. Hamburger and P.O. Marion issued the Plaintiff a summons for "double parking" Plaintiff's Taurus [hereinafter referred to as the "Double Parking Summons"].

89. Defendants Sgt. Hamburger and P.O. Marion issued the "Double Parking Summons" without reasonable or probable cause, in violation of the Claimant's rights.

90. At all times, the Plaintiff maintained his innocence.

91. Thereafter, the Plaintiff appeared for a hearing on the "Double Parking Summons", and it was dismissed.

**D. May 19, 2014 Incident**

92. On May 19, 2014, at approximately 2:32 p.m., the Plaintiff was operating Plaintiff's Taurus, traveling Eastbound on Archer Avenue in the County of Queens, City and State of New York.

93. The Plaintiff stopped his vehicle at the intersection with Guy Brewer Boulevard in the County of Queens in order to permit traffic traveling Westbound on Archer Avenue to clear the intersection.

94. While the Plaintiff was waiting for the intersection to clear, a white police car with blue "NYPD" lettering passed him heading in the opposite direction on Archer

-15-

Avenue in the County of Queens [hereinafter referred to as the "5/19/2014 Police Car"].

95. Once the traffic cleared the intersection, the Plaintiff had a steady green light and proceeded to turn left onto Guy R. Brewer Boulevard.

96. After the Plaintiff turned onto Guy R. Brewer Boulevard, the "5/19/2014 Police Car" made a "U-Turn" on Archer Avenue, activated its siren and police lights and then proceeded to turn left onto Guy R. Brewer Boulevard, pulling-up immediately behind the Plaintiff's Taurus.

97. The officers in the "5/19/2014 Police Car" indicated for the Plaintiff to pull over and stop the Plaintiff's Taurus on the side of the road, which the Plaintiff did.

98. After the Plaintiff stopped, the "5/19/2014 Police Car" stopped behind him and Defendants Sgt. Hamburger and P.O. Marion exited from the police vehicle and approached the driver's side of the Plaintiff's Taurus.

99. The Plaintiff recognized Defendants Sgt. Hamburger and P.O. Marion as two of the police officers who had stopped him on May 2, 2014, and who again on May 17, 2014.

100. Defendants Sgt. Hamburger and P.O. Marion ordered the Plaintiff to give them his license and registration.

101. While they were talking, Defendant Sgt. Hamburger ordered the Plaintiff to give him two bottles of medication which were visible and been prescribed to the Plaintiff for treatment by his treating physician.

-16-

102.  The Plaintiff had previously been prescribed the medication by his treating physician [hereinafter referred to as the Plaintiff's "Treating Physician"] for a medical condition [hereinafter referred to as the "Prescribed Medications"].

103.  Defendant Sgt. Hamburger asked the Plaintiff the reason he had the Prescribed Medications, and the Plaintiff told him it was for surgery he previously had.

104.  Defendants Sgt. Hamburger and P.O. Marion took the Plaintiff's license, registration and "Prescribed Medications" back to the "/19/2014 Police Car."

105.  Upon information and belief, Defendant Sgt. Hamburger, without the Plaintiff's consent or permission, contacted the Plaintiff's Treating Physician based on information contained on the labels to the "Prescribed Medications."

106.  Upon information and belief, Defendant Sgt. Hamburger did not obtain the Plaintiff's consent, a warrant or other form of Court Order to contact the Plaintiff's Treating Physician who had prescribed the "Prescribed Medications."

107.  Upon information and belief, Defendant Sgt. Hamburger did not obtain permission from any senior member of Defendant NYPD to contact the Plaintiff's Treating Physician who had prescribed the "Prescribed Medication."

108.  After a long period of time, Defendants Sgt. Hamburger and P.O. Marion returned the Plaintiff's license, registration and "Prescribed Medicine" along with a Summons for a moving violation New York State Vehicle and Traffic Law Section 1111 (D)-1 [hereinafter referred to as the "5/19/2014 Summons"].

109.  In and about the first week in June, 2014, the Plaintiff called his Treating Physician for follow-up treatment.

-17-

110.   When the Plaintiff called his Treating Physician in the first week of June, 2014, the Plaintiff's Treating Physician told the Plaintiff he could no longer treat him.

111.   During the telephone conversation in the first week in June, 2014, The Treating Physician told the Plaintiff that:

a.   Defendant Sgt. Hamburger had called him on the phone and told the Treating Physician that the Plaintiff was:

"selling the pills that [that the physician] had prescribed"

b.   He [the physician] could no longer treat the Plaintiff because:

"I don't know if you're selling my pills, I can't give you [anymore] pills because the police [are] calling me."

112.   On August 29, 2014, the Plaintiff appeared for a hearing before the New York State Traffic Violations Bureau in Queens, New York in order to respond and defend the "5/19/2014 Summons."

113.   On August 29, 2014, Defendant P.O. Marion appeared to testify at the New York State Traffic Violations Bureau in Queens, New York regarding the "5/19/2014 Summons."

114.   On August 29, 2014, Defendant P.O. Marion testified at the New York State Traffic Violations Bureau in Queens, New York y regarding the "5/19/2014 Summons."

115.   On August 29, 2014, at the conclusion of Defendant P.O. Marion's testimony before the New York State Traffic Violations Bureau in Queens, New York y regarding the "5/19/2014 Summons," the summons was dismissed.

-18-

116. At all times, the Plaintiff maintained his innocence.

117. Upon information and belief, at all times material hereto, the "5/19/2014 Summons" was issued by Defendants Sgt. Hamburger and P.O. Marion in order to harass, annoy and otherwise in to wilfully infringe on the Plaintiff's rights.

118. After the Plaintiff received the "5/19/2014 Summons," Defendant Sgt. Hamburger while traveling in a police vehicle on the occasions when he would pass the Plaintiff, Kenji Webb, without reasonable nor probable cause, would call the Plaintiff's name over a loud-speaker, so as to frighten and intimidate the Plaintiff.

119. During the course and time of the events, various Defendant Police Officers indicated to the Plaintiff, Kenji Webb that he was being targeted due to his brother, Wanji Webb.

120. Defendant Police Officers singled out the Plaintiff, Kenji Webb to disparately treat him based on alleged conduct by his brother, Wanji Webb.

**D. May 23, 2014 Incident with Kenji Webb**

121. On May 23, 2014 at approximately 9:30 a.m., the Plaintiff was walking on 89th Avenue, between 165th and Merrick Boulevard, in the County of Queens, City and State of New York.

122. Upon information and belief, on or about May 23, 2014, Defendant "John Doe No. 4" is the member of Defendant NYPD, who upon information and belief, provided wilfully false and intentionally misleading information in order to obtain a warrant resulting in the arrest of the Plaintiff, Kenji Webb and the searching of the residence of the Plaintiff, Evelyn Cramer's residence.

-19-

123.   Upon information and belief, Defendant P.O. Michels aided and assisted Defendant "P.O. John Doe. No. 4" in creating and otherwise obtaining the warrant against the Plaintiff, Kenji Webb.

124.   Upon information and belief, Defendants "P.O. John Doe No. 4" and/or P.O. Michels provided false information as part of a pattern and practice of harassing and intimidating the Plaintiff, Kenji Webb and his family.

125.   On May 23, 2014 at approximately 9:30 a.m., while the Plaintiff was walking on 89th Avenue, Defendant P.O. John Does Nos. "5", "6", and "8" were dressed in plain-clothes and approached the Plaintiff, Kenji Webb from the opposite direction [collectively referred to as the "5/23/2014 Arresting Officers"].

126.   The "5/23/2014 Arresting Officers" together and in concert, seized, arrested and handcuffed the Plaintiff, Kenji Webb.

127.   After restraining the Plaintiff, the "5/23/2014 Arresting Officers" brought him to the corner of 89th Avenue and Merrick Boulevard, County of Queens, City and State of New York, a location across the street from the residence of the Plaintiff Evelyn Cramer.

128.   That a Police Van was parked at the corner of 89th Avenue and Merrick Boulevard, County of Queens, City and State of New York [hereinafter referred to as "Police Van No. 3"].

129.   The "5/23/2014 Arresting Officers" put the Plaintiff into "Police Van No. 3".

130.   While the Plaintiff was held and detained in "Police Van No. 3", the "5/23/2014 Arresting Officers" immediately commenced strip searching the Plaintiff while

-20-

the doors to "Police Van No. 3" were open and the Plaintiff was in full view to public outside of the "Police Van No. 3" [hereinafter referred to as the "5/23/2014 Strip Search"].

131.   "Defendant John Doe P.O. No. 4" pulled down the Plaintiff's pants in public view during the "5/23/2014 Strip Search", and performed an rectal cavity search during the "5/23/2014 Strip Search."

132.   During the course the "5/23/2014 Strip Search", the "5/23/2014 Arresting Officers" told the Plaintiff to remove his sneakers and socks, and then searched them and the Plaintiff's feet.

133.   Once the "5/23/2014 Arresting Officers" completed their search of the Plaintiff, they permitted him to put his clothes back on, all in view of the public.

134.   On May 23, 2014, Defendant P.O. Michels signed a Complaint for the Criminal Court of the City of New York, County of Queens [hereinafter referred to as the "May 23, 2014 Complaint"]. A true copy of the May 23, 2014 Complaint is annexed hereto as **Exhibit "D"**.

135.   Defendant Michels in the complaint which he signed, averred the Plaintiff, Kenji Webb in the "May 23, 2014 Complaint" had committed eight (8) misdemeanors and one (1) violations of the New York Penal Law.

136.   Defendant Michels in the "May 23, 2014 Complaint" initially charged the Plaintiff with the following crimes and violation:

   a.   Criminal Possession of a Controlled Substance in the Seventh Degree in violation of New York Penal Law Section 220.03;

b.      Criminally Using Drug Paraphernalia in the Second Degree in violation of New York Penal Law Section 220.50 (2);

c.      Criminally Using Drug Paraphernalia in the Second Degree in violation of New York Penal Law Section 220.50 (3);

d.      Criminal Possession of a Weapon in the Fourth Degree in violation of New York Penal Law Section 265.01 (1);

e.      Criminal Possession of a Weapon in the Fourth Degree in violation of New York Penal Law Section 265.01 (2);

f.      Possession of Firearms in violation of New York City Administrative Code Section 10-131-B (1)

g.      Unlawful Possession of Radio Devices in violation of the New York Penal Law Section 140.40; and,

h.      Unlawful Possession of Marihuana in violation of New York Penal Law Section 221.05.

i.      The Charge of Unlawful Possession of Marihuana was later dismissed.

137.    The May 24, 2014 Complaint was assigned docket number 2014QN030635 by the Criminal Court of the City of New York for the County of Queens.

138.    Defendant Michels made wilfully false and untruthful statements in the Criminal Complaint which he knew were untrue.

139.    On May 24, 2014, the Plaintiff Kenji Webb was taken before a Judge of the Criminal Court of the City of New York for the County of Queens.

140.    On May 24, 2014, the Plaintiff Kenji Webb taken to APAR-4 of the Criminal Court of the City of New York for the County of Queens.

141.    On May 24, 2014, the Plaintiff, Kenji Webb was released form custody on his own recognizance by the Criminal Court of the City of New York, County of Queens.

142.   At all times material herein, the Plaintiff, Kenji Webb did maintain his innocence of the charges against him.

143.   As a result of the foregoing May 23, 2014 Complaint, the Plaintiff was required to retain counsel to defend himself from the criminal charges made against him by the individual Defendant Police Officers.

144.   As a result of the foregoing May 23, 2014 Complaint, the Plaintiff was required to appear on numerous occasions in the Criminal Court.

145.   As a result of the foregoing May 23, 2014 Complaint, the Plaintiff was required to defend himself before the Criminal Court.

146.   That neither reasonable nor probable cause existed for the individual Defendant Police Officers to arrest the Plaintiff.

147.   That neither reasonable nor probable cause existed for the individual Defendant Police Officers to use any force against the Plaintiff.

148.   The individual Defendant Police Officers made statements and allegations against the Plaintiff with actual malice and utter disregard for the truth and the Plaintiff's rights under the Constitutions and laws of the U.S. and the State of New York.

149.   The charges are still pending in the Criminal Court of the City of New York, County of Queens, and no disposition has been made as of August 7, 2015. Hearings are scheduled.

150.   The individual Defendant Police Officers made false and untruthful statements and allegations against the Plaintiff, Kenji Webb, including the submission of knowingly false and untrue statements in support of the warrants. These

-23-

defendants made the false statements knowing the did not have probable or reasonable cause to believe the Plaintiff guilty of the crimes he was later charged.

151. The individual Defendant Police Officers conduct included, but not limited to the commission and subornation of perjury, to conceal from the Plaintiff and his counsel and from the Trial Court, the fact that the Defendant Police Officers had falsely accused the Plaintiff of the crimes he was charged.

152. Upon information and belief, the individual Defendants Police Officers' conduct against the Plaintiff was a mere pretext to provide color to their conduct, including the arrest and use of physical force against the Plaintiff, Kenji Webb.

153. The Plaintiff, Kenji Webb sustained severe emotional as well physical injury as a direct result of the aforementioned conduct by the defendants, including, but not limited to discomfort, pain and suffering, mental anguish, fright and shock.

154. Neither reasonable nor probable cause existed for the Defendant Police Officers' conduct towards the Plaintiff herein.

155. The Defendant Police Officers used excessive force against the Plaintiff, Kenji Webb without justification or cause.

156. Upon information and belief, these acts were especially committed against the Plaintiffs due to his race and color.

157. The Plaintiff, Kenji Webb sustained emotional and physical injury as a direct result of the aforementioned conduct by the Defendant Police Officers, including, discomfort, pain and suffering, mental anguish, fright, shock and other injuries.

### E. May 23, 2014 Incident with Evelyn Cramer

158. On May 23, 2014, the Plaintiff, Evelyn Cramer resided at 88-24 Merrick Boulevard, Apartment 6A, County of Queens, City and State of New York.

159. The Plaintiff, Evelyn Cramer, is the grandmother of the Plaintiff Kenji Webb.

160. The Plaintiff, Evelyn Cramer had formerly served in the local Auxiliary Police as well as providing other local civil activities in the community over the years.

161. At all times material hereto, and since November, 2010, the Plaintiff Kenji Webb did not reside at 88-24 Merrick Boulevard, Apartment 6, County of Queens, City and State of New York.

162. At all times material hereto, Defendants, including the individual Police Officers knew the Plaintiff, Kenji Webb did not reside at 88-24 Merrick Boulevard, Apartment 6, County of Queens, City and State of New York.

163. On May 23, 2014, Defendants P.O. "John Doe Nos. 9 and 10" (along with possibly other officers) broke into the Plaintiff Evelyn Cramer's apartment [hereinafter refer to as "05/23/2014 Searching Officers."

164. Upon information and belief, the Defendant "05/23/2014 Searching Officers" broke into the Plaintiff, Evelyn Cramer's apartment purportedly searching for goods which they could create fictitious claims of those items belonging to, or otherwise being possessed by the Plaintiff, Kenji Webb.

165. Defendant "05/23/2014 Searching Officers" engaged in a violent and rabid search throughout the Plaintiff, Evelyn Cramer's apartment, recklessly damaging her property and creating chaos and havoc.

166. As a result of Defendant "05/23/2014 Searching Officers" conduct, the Plaintiff, Evelyn Cramer was terrorized and placed in fear of her own personal safety.

167. Upon information and belief, Defendant "05/23/2014 Searching Officers" as well as the other the other indicated Police seized numerous articles from the Plaintiff, Evelyn Cramer's apartment, regardless as to the innocuous nature and true source of those goods.

168. Defendant P.O. Michels, along with other Police Defendants, thereafter falsely made statements claiming seized goods and articles found in the Plaintiff, Evelyn Cramer's apartment were contraband.

169. In fact, many of the articles seized in the Plaintiff, Evelyn Cramer's apartment, were lawful objects which she had possessed and maintained.

170. Other goods were seized from the Plaintiff, Evelyn Cramer's apartment from bed rooms which had never been occupied by the Plaintiff, Kenji Webb, but by other family members and were of a completely unknown origin.

171. Defendants have failed to return many of the articles which were lawful and owned by the Plaintiff, Evelyn Cramer.

172. As a result of the foregoing, the Plaintiff, Evelyn Cramer sustained physical damage to her property, as well as emotional trauma to her person.

173. On August 6, 2015, the remaining charges against the Plaintiff, Kenji Webb were adjourned in contemplation of dismissal pursuant to New York Criminal Procedure Law Section 170.55.

## PLAINTIFF KENJI WEBB'S FIRST CLAIM FOR RELIEF
### (Violation of Civil Rights, 42 USC § 1983)

174.  Plaintiff, Kenji Webb repeats and realleges each and every allegation in paragraphs "1" to "173" with the same force and effect as if herein more fully set forth.

175.  All of the above Defendant Police Officers, by their foregoing acts on May 11, 2014, May 17, 2014, May 19, 2014 and May 23, 2014, intentionally and willfully acted jointly and severally under color of law, statute, ordinance, regulations, customs and practice of the State of New York, to deprive the Plaintiff of his rights, privileges and immunities secured to him by the Constitutions and laws of the United States and New York.

176.  All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

177.  All of the aforementioned acts deprived the Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983.

178.  The acts complained of were carried out by the aforementioned individual Defendants in their capacities as Police Officers, with all the actual and/or apparent authority attendant thereto.

179.  The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York

-27-

City Police Department, all under the supervision of ranking officers of said department.

180. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

181. The acts complained of deprived the Plaintiff of his rights:

    a.    Not to seize, stop, search or arrest a person without reasonable nor probable cause;

    b.    Not to seize, stop or otherwise harass members of the public due to their race, color or national origin;

    c.    Not to disparately treat a person based on their race, color or subjective beliefs based on familial relations;

    d.    Not to have excessive force imposed upon a civilian;

    e.    Not to have excessive force imposed upon an arrestee;

    f.    Not to have summary punishment imposed upon an arrestee;

    g.    Not to be charged with false and inaccurate charges;

    h.    To receive equal protection under the law.

182. The foregoing violations of the Plaintiff's Constitutional rights were undertaken under color of law, statutes, regulations and Constitution of the State of New York.

183. As a result of the foregoing conduct by Defendants herein, the Plaintiff has been damaged in an amount to be determined by this Court, but in no event less than:

a.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 2, 2014 incident jointly and severally against all Defendants;

b.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 11, 2014 incident jointly and severally against all Defendants;

c.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 17, 2014 incident jointly and severally against all Defendants;

d.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 19, 2014 incident jointly and severally against all Defendants;

e.    Four Million ($4,000,000.00) Dollars compensatory damages on the May 23, 2014 incident jointly and severally against all Defendants; along with.

f.    One Million ($1,000,000.00) Dollars punitive damages on the May 11, 2014 incident against the individual Police Officer Defendants;

g.    One Million ($1,000,000.00) Dollars punitive damages on the May 17, 2014 incident against the individual Police Officer Defendants;

h.    One Million ($1,000,000.00) Dollars punitive damages on the May 19, 2014 incident against the individual Police Officer Defendants; and

i.    One Million ($1,000,000.00) Dollars punitive damages on the May 23, 2014 incident against the individual Police Officer Defendants.

**PLAINTIFF KENJI WEBB'S SECOND CLAIM FOR RELIEF**
**(Violation of Civil Rights, 42 USC § 1983 & HIPAA)**

184.    Plaintiff, Kenji Webb repeats and realleges each and every allegation in paragraphs "1" to "173" and "175" to "183" with the same force and effect as if herein more fully set forth.

185.    Pursuant to Health Insurance Portability and Accountability Act of 1996 ["HIPAA"], Public Law 104-101, 110 Stat. 1936 (1996) along with its implementing regulations as well as New York Law, law enforcement agencies, including Defendant NYPD and its personnel, are prohibited from communicating

-29-

with civilian medical provides, and otherwise obtaining medical information regarding civilians absent compliance with certain protocols or authorization by the civilian or authorization by a Court.

186. Defendants' communicated with the Plaintiff, Kenji Webb's Treating Physician on or about May 19, 2014 without the consent of this Plaintiff's consent.

187. Defendants' communicated with the Plaintiff, Kenji Webb's Treating Physician on or about May 19, 2014 without going through lawful process as provided under the law, or otherwise obtaining Court permission.

188. Defendants' communicated with the Plaintiff, Kenji Webb's Treating Physician on or about May 19, 2014 constituted a violation of his privacy rights, as provided under the Fourth and Fourteenth Amendments to the United States Constitution, as well as pursuant to HIPAA.

189. Defendants' conduct damaged the Plaintiff, Kenji Webb by interfering with his ability to seek and otherwise obtain medical care and treatment.

190. All of the above Defendants, by their foregoing acts, intentionally and willfully acted jointly and severally under color of law, statute, ordinance, regulations, customs and practice of the State of New York, to deprive the Plaintiff of his rights, privileges and immunities secured to him by the Constitutions and laws of the United States and New York.

191. All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

192.    As a result of the foregoing conduct by Defendants herein, the Plaintiff has been
        damaged in an amount to be determined by this Court, but not less than Two
        Million ($2,000,000.00) Dollars compensatory damages and Two Million
        ($2,000,000.00) Dollars punitive damages as against Defendant Sgt. Hamburger.

### PLAINTIFF KENJI WEBB'S THIRD CLAIM FOR RELIEF
**(Monell Claim Against Defendants City & Bratton)**

193.    Plaintiff, Kenji Webb repeats and realleges each and every allegation in
        paragraphs "1" to "173", "175" to "183" and "185" to "192" with the same force
        and effect as if herein more fully set forth.

194.    Defendants City and/or Bratton was/were obligated to provide rules, regulations
        and training concerning safe processes and procedures for members of Defendant
        NYPD in conducting warrantless arrests, including, but limited to the handcuffing
        and searching of members of the public, including the Plaintiff herein.

195.    Defendants City and/or Bratton was/were obligated to provide rules, regulations
        and training concerning the treatment of members of the public, and not to engage
        in personal acts targeting individuals, particularly based on race and color.

196.    Defendants City and/or Bratton, as the Defendants responsible for the policies,
        practices and/or customs of Defendant NYPD, have acted with deliberate
        indifference to the laws of the State of New York the rights of those who would
        come into contact with Defendant NYPD in this case by failing to:

        a.      Properly train, screen and supervise;

        b.      Inadequately monitor NYPD Officers in arresting members of the public,
                including the Plaintiff herein, so as to avoid the use of unnecessary force;

-31-

      c.      Require members of Defendant NYPD, including the Defendant Police Officers herein, to not use disparate force and treatment against minority members, including persons of African-American descent such as the Plaintiff herein.

197.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

198.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendants City and NYPD all under the supervision of ranking officers of said department.

199.    The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff.

200.    The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD were the direct and proximate cause of the constitutional violations suffered by the Plaintiff, as alleged herein.

201.    The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD were the moving force behind the constitutional violations suffered by the Plaintiff, as alleged herein.

202.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD, the Plaintiff, was subjected to unlawful and excessive force resulting in permanent and disabling injuries.

-32-

203. The individual Defendant Police Officers, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate Police Officers, and were directly responsible for the violation of the Plaintiff's constitutional rights.

204. The individual Defendant Police Officers, by their conduct, deprived the Plaintiff, of his Federally protected rights, including, but not limited to, the right:

   a.   Not to disparately treat members of the public due to familial relations;

   b.   Not to disparately treat members of the public due to race and/or national origin;

   c.   Not to have excessive force imposed upon him;

   d.   Not to have summary punishment imposed upon him; and,

   e.   To receive equal protection under the law.

205. As a result of the foregoing, the Plaintiff, sustained, *inter alia*, loss of liberty, emotional distress, embarrassment, humiliation, deprivation of his constitutional rights and is entitled to compensatory and punitive damages in an amount to be determined by trial.

206. As a result of the foregoing conduct by Defendants herein, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than One Million ($1,000,000.00) Dollars compensatory damages jointly and severally against the Defendants.

**PLAINTIFF'S KENJI WEBB'S FOURTH CLAIM FOR RELIEF**
**(First Supplemental Claim Against Municipal Defendants)**

207.   Plaintiff, Kenji Webb repeats and realleges each and every allegation in paragraphs "1" to "173", "175" to "183", "185" to "192" and "194" to "206" with the same force and effect as if herein more fully set forth.

208.   The Plaintiff asserts Supplemental Jurisdiction over claims arising under New York law, 28 USC § 1367.

209.   The Supplemental claims fall within one or more of the exceptions as outlined in New York local law, C.P.L.R. § 1602.

210.   Defendants City and/or NYPD by their employees, agents and/or servants were negligent, careless, and otherwise acted improperly in the with

    a.   the May 11, 2014 incident resulting in the issuance of the "May 11, 2014 Complaint;"

    b.   the May 17, 2014 incident resulting in the issuance of the "Double Parking Summons;"

    c.   the May 19, 2014 incident resulting in the issuance of the "5/19/2014 Summons;"

    d.   the May 23, 2014 incident resulting in the issuance of the "5/23/2014 Complaint."

211.   Defendants conduct against the Plaintiff, Kenji Webb constituted unnecessary and unreasonable force, assault, battery, false arrest, intentional and/or negligent infliction of emotional distress, abuse of process malicious prosecution.

212.   Defendants were further careless and wantonly reckless, and otherwise failed to follow proper procedures and protocols by conducting a strip search of the Plaintiff in public view on May 23, 2014.

213. As a result of the individual Defendant Police Officers' conduct, the Plaintiff has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

214. As a result of Defendants' conduct and negligence, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than:

    a.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 11, 2014 incident jointly and severally against all Defendants;

    b.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 17, 2014 incident jointly and severally against all Defendants;

    c.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 19, 2014 incident jointly and severally against all Defendants; and,

    d.    Four Million ($4,000,000.00) Dollars compensatory damages on the May 23, 2014 incident jointly and severally against all Defendants.

## PLAINTIFF KENJI WEBB'S FIFTH CLAIM FOR RELIEF
### (Second Supplemental Claim Against Municipal Defendants)

215. Plaintiff, Kenji Webb repeats and realleges each and every allegation in paragraphs "1" to "173", "175" to "183", "185" to "192", "194" to "206" and "208" to "214" with the same force and effect as if herein more fully set forth.

216. Defendant City and/or NYPD by their employees, agents, and/or servants were negligent, careless, and reckless in failing to properly control the conduct of its members in making unauthorized and improper communications with Plaintiff's Treating Physician on or about May 19, 2014.

217. As a result of Defendants' conduct and negligence, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than Two Million ($2,000,000.00) Dollars compensatory damages as against Defendants.

### PLAINTIFF KENJI WEBB'S SIXTH CLAIM FOR RELIEF
#### (Third Supplemental Claim Against Municipal Defendants)

218.    Plaintiff, Kenji Webb repeats and realleges each and every allegation in paragraphs "1" to "173", "175" to "183", "185" to "192", "194" to "206", "208" to "214" and "216" to "217" with the same force and effect as if herein more fully set forth.

219.    The statements made by Defendant Sgt. Hamburger falsely accused the Plaintiff, Kenji Webb of having committed conduct which would constitute felonious sale of a controlled substance.

220.    Defendant Sgt. Hamburger statements uttered to the Plaintiff's Treating Physician were false and slanderous *per se*.

221.    Defendant Sgt. Hamburger's defamatory statements damaged the Plaintiff, interfering with necessary medical treatment and care.

222.    As a result of Defendants' conduct and slanderous statements, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than One Million ($1,000,000.00) Dollars damages as against the Defendants.

### PLAINTIFF EVELYN CRAMER'S FIRST CLAIM FOR RELIEF
#### (Violation of Civil Rights, 42 USC § 1983)

223.    Plaintiff, Evelyn Cramer repeats and realleges each and every allegation in paragraphs "1" to "173", "175" to "183", "185" to "192", "194" to "206", "208" to "214", "216" to "217" and "219" to "222" with the same force and effect as if herein more fully set forth.

224. Defendants entry into the Plaintiff, Evelyn Cramer's apartment was the result of a intentionally false information submitted to the Court.

225. Defendants further used excessive force in conducting the search of the Plaintiff, Evelyn Cramer's apartment, terrifying this Plaintiff, and causing her to otherwise be intimidated.

226. Defendants' conduct violated the Plaintiff, Evelyn Cramer's rights to privacy and due process under the Fourth and Fourteenth Amendments to the U.S. Constitution, and Section 6 of New York Constitution.

227. As a result of Defendants' conduct and negligence, the Plaintiff the Plaintiff has been damaged in an amount to be determined by this Court, but not less than One Million ($1,000,000.00) Dollars compensatory damages and One Million ($1,000,000.00) Dollars punitive damages as against the Individual Police Officer Defendants.

### PLAINTIFF EVELYN CRAMER'S FIRST CLAIM FOR RELIEF
#### (Supplemental Claim Against Municipal Defendants)

228. Plaintiff, Evelyn Cramer repeats and realleges each and every allegation in paragraphs "1" to "173", "175" to "183", "185" to "192", "194" to "206", "208" to "214", "216" to "217", "219" to "222" and "224" to "227" with the same force and effect as if herein more fully set forth.

229. Defendants unlawfully trespassed onto the Plaintiff, Evelyn Cramer's property through the use of false and misleading information.

230. Defendants were further negligent in their execution of the warrant, causing unnecessary damage to the Plaintiff's property.

231. Defendants further improperly and without justification seized personal property from the Plaintiff, Evelyn Cramer.

232. Defendants conduct against the Plaintiff, Evelyn Cramer constituted intentional and/or negligent infliction of emotional distress as well as conversion of her property.

233. As a result of Defendants' conduct and negligence, the Plaintiff the Plaintiff has been damaged in an amount to be determined by this Court, but not less than One Million ($1,000,000.00) Dollars compensatory damages against the Defendants.

## PLAINTIFFS KENJI WEBB and EVELYN CRAMER'S CLAIMS FOR FEES
### (Supplemental Claim Against Municipal Defendants)

234. Plaintiff, Evelyn Cramer repeats and realleges each and every allegation in paragraphs "1" to "173", "175" to "183", "185" to "192", "194" to "206", "208" to "214", "216" to "217", "219" to "222", "224" to "227" and "229" to "233" with the same force and effect as if herein more fully set forth.

235. As a result of the foregoing conduct, the Plaintiffs, Kenji Webb and Evelyn Cramer are entitled to reasonable attorney's fees pursuant to 42 U.S.C. § 1988 in an amount to be determined by this Court, as well as costs and disbursements in this action.

WHEREFORE, Plaintiff respectfully prays this Court for a judgment as follows:

    a.    On the Plaintiff, Kenji Webb's First Claim for Relief:

            i.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 2, 2014 incident jointly and severally against all Defendants;

-38-

ii.     Two Million ($2,000,000.00) Dollars compensatory damages on the May 11, 2014 incident jointly and severally against all Defendants;

iii.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 17, 2014 incident jointly and severally against all Defendants;

iv.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 19, 2014 incident jointly and severally against all Defendants;

v.     Four Million ($4,000,000.00) Dollars compensatory damages on the May 23, 2014 incident jointly and severally against all Defendants; along with.

vi.    One Million ($1,000,000.00) Dollars punitive damages on the May 11, 2014 incident against the individual Police Officer Defendants;

vii.   One Million ($1,000,000.00) Dollars punitive damages on the May 17, 2014 incident against the individual Police Officer Defendants;

viii.  One Million ($1,000,000.00) Dollars punitive damages on the May 19, 2014 incident against the individual Police Officer Defendants; and

ix.    One Million ($1,000,000.00) Dollars punitive damages on the May 23, 2014 incident against the individual Police Officer Defendants.

b.    On the Plaintiff, Kenji Webb's Second Claim for Relief:

i.     Two Million ($2,000,000.00) Dollars compensatory damages as against Defendant Sgt. Hamburger;

ii.    Two Million ($2,000,000.00) Dollars punitive damages as against Defendant Sgt. Hamburger.

c.    On the Plaintiff, Kenji Webb's Second Claim for Relief in an amount to be determined by this Court, but not less than One Million ($1,000,000.00) Dollars jointly and severally against Defendants;

d.    On the Plaintiff, Kenji Webb's Fourth Claim for Relief:

    i.      Two Million ($2,000,000.00) Dollars compensatory damages on the May 11, 2014 incident jointly and severally against all Defendants;

    ii.     Two Million ($2,000,000.00) Dollars compensatory damages on the May 17, 2014 incident jointly and severally against all Defendants;

    iii.    Two Million ($2,000,000.00) Dollars compensatory damages on the May 19, 2014 incident jointly and severally against all Defendants; and,

    iv.    Four Million ($4,000,000.00) Dollars compensatory damages on the May 23, 2014 incident jointly and severally against all Defendants.

e.    On the Plaintiff, Kenji Webb's Fifth Claim for Relief, in an amount to be determined by this Court, but not less than Two Million ($2,000,000.00) Dollars compensatory damages as against the defendants;

f.    On the Plaintiff, Kenji Webb's Sixth Claim for Relief, an amount to be determined by this Court, but not less than One Million ($1,000,000.00) Dollars compensatory damages as against the Defendants.

g.    On the Plaintiff, Evelyn Cramer's First Claim for Relief, an amount to be determined by this Court, but not less than One Million ($1,000,000.00) Dollars compensatory damages as against the Defendants and One Million ($1,000,000.00) Dollars punitive damages as against the individual defendant Police Officers;

h.    On the Plaintiff, Evelyn Cramer's Second Claim for Relief, an amount to be determined by this Court, but not less than One Million ($1,000,000.00) Dollars compensatory damages as against the Defendants; and

i.    Reasonable attorneys fees pursuant to 42 U.S.C. §§ 1988 in an amount to be determined by this Court;

as well as costs, fees disbursements.

Dated: New York, N.Y.
        August 7, 2015

Yours, etc.,
MATTHEW A. KAUFMAN, ESQ.

By: Matthew A. Kaufman - (MK 0598)
Attorney for Plaintiff
225 Broadway - Suite 1606
New York, N.Y. 10007
Tel. No. (212) 619-2200
MAK File No.      15,207.308
makaufman01@yahoo.com

# EXHIBIT "A"

THE CITY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**In the Matter of the Claim of**
EVELYN CRAMER,

Claimant,

-against-                                          <u>VERIFIED NOTICE OF CLAIM</u>

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT and POLICE
OFFICER "JOHN" DOES No. "1" through "10" (actual
names unknown, indicating various Police Officers in the
employ of Respondent City on May 23, 2014 and assigned
to the 103rd Precinct),

Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**TO:    THE COMPTROLLER OF THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT and POLICE OFFICERS JOHN DOES Nos. "1" through "10" (actual names unknown, indicating various Police Officers in the employ of Respondent City on May 23, 2014 and assigned to the 103rd Precinct):**

**PLEASE TAKE NOTICE,**

**THAT,** the undersigned Claimant, EVELY CRAMER, hereby makes claims against:

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT and POLICE OFFICERS JOHN DOES Nos. "1" through "10" (actual names unknown, indicating various Police Officers in the employ of Respondent City on May 23, 2014 and assigned to the 103rd Precinct):

1.    **Name and post-office address of the claimants and their attorneys are as follows:**

EVELYN CRAMER                          MATTHEW A. KAUFMAN, ESQ.
88-24 Merrick Boulevard                225 Broadway - Suite 1606
Queens, N.Y. 11432                     New York, N.Y. 10007
                                       Tel. No. (212) 619-2200

2.    **Nature of the Claim:**

Claim for violation of the Claimants Civil and Constitutional rights, including unreasonable search and seizure of her property and home at 88-24 Merrick Boulevard, Jamaica, New York by Respondents. Said conduct also included negligent and/or intentional infliction of emotional distress as well as conversion

of her personal property.

Upon information and belief, said conduct was performed without a proper warrant, or done with a warrant based on false and fabricated information which Respondents knew was false, or should have known was false.

Upon information and belief, the aforementioned conduct by Respondents is in retaliation to conduct allegedly committed wilfully in retaliation against the Claimant due to her family, particularly her grandson, Wanji Webb on April 30, 2013 on 163rd Street between Hillside Avenue and 89th Avenue, Queens, New York.

3.    **The time when, the place where and the manner in which the claim arose**

**were as follows:**

a.    The claim arose on May 23, 2014 at approximately 9:30 a.m., at 88-24 Merrick Boulevard, Apartment 6A, Jamaica, New York, at which time Respondents violently and forcefully broke into the Claimant's apartment using a battering ram of sorts. Said entry was without the permission nor the consent of the Claimant, and upon information and belief, was without reasonable nor probable cause. The Claimant demanded Respondents to show a warrant, which Respondent Police Officers refused to show or otherwise disclose.

Respondents conducted and extensive search and destruction of the Claimant's home, going through every single room, closet and location in the apartment. During the course of the search, Respondents removed property that had been previously provided to her during her working with the local Auxiliary Police. The Claimant was not provided with any voucher or receipt for the any of the goods seized by Respondent Police Officers.

4.    **Items of damage or injuries claimed are (including dollar amounts):**

The Claimant, Evelyn Cramer suffered emotional injuries due to Respondent's conduct, as well as loss of her property.

**TOTAL AMOUNT CLAIMED:**

**KENJI WEBB          ONE MILLION ($1,000,000.00) DOLLARS**

-2-

Dated: New York, New York
      June 2, 2014

                     Yours, etc.,
                     MATTHEW A. KAUFMAN, ESQ.

                     By:    Matthew A. Kaufman
                     Attorney for Claimant
                     225 Broadway - Suite 1606
                     New York, NY 10007-3701
                     Tel. No. (212) 619-2200
                     My File No.   15,207.310

# VERIFICATION

STATE OF NEW YORK        )
                              : SS.:

COUNTY OF                )

**EVELYN CRAMER,** being duly sworn, depose and say:

I am Claimant herein, I have read the foregoing Notice of Claim and know the contents thereof; and the same are true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

**EVELYN CRAMER**

Sworn to before me the

4th day of June, 2014

Notary Public

MARIAME _____
Notary Public - State of New York
No. 01SI6229036
Qualified in Bronx County
My Comm. Expires Oct. 4, 2016

# EXHIBIT "B"

THE CITY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
**In the Matter of the Claim of**
KENJI WEBB,

Claimant,

-against-

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT and POLICE
OFFICER "JOHN" BOYCE (actual name unknown, in
the employ of Respondent CITY/NYPD on May 11, 2014
and assigned to the 103rd Precinct), SGT. "JOHN" CHANG
(actual name unknown, in the employ of Respondent CITY/
NYPD on May 11, 2014 and assigned to the 103rd Precinct),
POLICE OFFICER "JOHN" MARION (actual name
unknown, in the employ of Respondent CITY/NYPD on
May 17, 2014 and assigned to the 103rd Precinct), POLICE
OFFICERS JOHN DOES No. "1" through "10" (actual
names unknown, indicating various Police Officers in the
employ of Respondent City on May 11, 2014, May 17, 2014,
May 19, 2014 and May 23, 2014 and assigned to the 103rd
Precinct) and SGT. JOHN DOE (actual names
unknown, in the employ of Respondent City on May 11,
2014, May 17, 2014 and May 19, 2014 and assigned to the
103rd Precinct) indicating a POLICE SERGEANT "JOHN"
HAMBURGER (actual first name unknown, in the employ
of Respondent City on May 11, 2014, May 17, 2014 and
May 19, 2014 through June 26, 2014 and assigned to
the 103rd Precinct),

**VERIFIED NOTICE OF CLAIM**

Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**TO:**   **THE COMPTROLLER OF THE CITY OF NEW YORK, THE CITY OF NEW
YORK, THE NEW YORK CITY POLICE DEPARTMENT and POLICE
OFFICER "JOHN" BOYCE (actual name unknown, in the employ of Respondent
CITY/NYPD on May 11, 2014 and assigned to the 103rd Precinct), SGT. "JOHN"
CHANG (actual name unknown, in the employ of Respondent CITY/NYPD on May
11, 2014 and assigned to the 103rd Precinct), POLICE OFFICER "JOHN" MARION
(actual name unknown, in the employ of Respondent CITY/NYPD on May 17, 2014
and assigned to the 103rd Precinct), POLICE OFFICERS JOHN DOES No. "1"
through "10" (actual names unknown, indicating various Police Officers in the
employ of Respondent City on May 11, 2014, May 17, 2014, May 19, 2014 and May**

-1-

23, 2014 and assigned to the 103rd Precinct) and SGT. JOHN DOE (actual names unknown, in the employ of Respondent City on May 11, 2014, May 17, 2014 and May 19, 2014 and assigned to the 103rd Precinct) indicating a POLICE SERGEANT "JOHN" HAMBURGER (actual first name unknown, in the employ of Respondent City on May 11, 2014, May 17, 2014 and May 19, 2014 through June 26, 2014 and assigned to the 103rd Precinct):

PLEASE TAKE NOTICE,

THAT, the undersigned Claimant, KENJI WEBB, hereby makes claims against:

THE COMPTROLLER OF THE CITY OF NEW YORK, THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT and POLICE OFFICER "JOHN" BOYCE (actual name unknown, in the employ of Respondent CITY/NYPD on May 11, 2014 and assigned to the 103rd Precinct), SGT. "JOHN" CHANG (actual name unknown, in the employ of Respondent CITY/NYPD on May 11, 2014 and assigned to the 103rd Precinct), POLICE OFFICER "JOHN" MARION (actual name unknown, in the employ of Respondent CITY/NYPD on May 17, 2014 and assigned to the 103rd Precinct), POLICE OFFICERS JOHN DOES No. "1" through "10" (actual names unknown, indicating various Police Officers in the employ of Respondent City on May 11, 2014, May 17, 2014, May 19, 2014 and May 23, 2014 and assigned to the 103rd Precinct) and SGT. JOHN DOE (actual names unknown, in the employ of Respondent City on May 11, 2014, May 17, 2014 and May 19, 2014 and assigned to the 103rd Precinct) indicating a POLICE SERGEANT "JOHN" HAMBURGER (actual first name unknown, in the employ of Respondent City on May 11, 2014, May 17, 2014 and May 19, 2014 through June 26, 2014 and assigned to the 103rd Precinct):

1. **Name and post-office address of the claimants and their attorneys are as follows:**

KENJI WEBB
123-27 Merrick Boulevard
Queens, N.Y. 11434

MATTHEW A. KAUFMAN, ESQ.
225 Broadway - Suite 1606
New York, N.Y. 10007
Tel. No. (212) 619-2200

-2-

2.      **Nature of the Claim:**

The within claim is for **SIX (6) violations** of the Claimant's Civil and

Constitutional Rights committed by respondents. The Claims are as follows:

a.      The **First Claim**, constituting a violation of the Claimant's Civil and Constitutional rights occurred on **May 11, 2014** at approximately 7:37 p.m., in front of 164-01 89th Avenue, Jamaica, New York. At that time, the Claimant was arrested without reasonable or probable cause, in violation of his Civil and Constitutional Rights. The Claimant was also subjected to unreasonable and unnecessary force in violation of his Civil and Constitutional Rights. The Claimant also asserts State law claims for assault, battery, false arrest, false imprisonment, abuse of process, malicious prosecution as well Constitutional malicious prosecution.

b.      The **Second Claim**, constituting a violation of the Claimant's Civil and Constitutional rights occurred on **May 17, 2014** at approximately 1:59 p.m. in front of 166-40 89th Avenue, Jamaica, New York. At that time, the Claimant was issued a summons without reasonable or probable cause, in violation of his Civil and Constitutional Rights. The Claimant also asserts State law claims for abuse of process, malicious prosecution, Constitutional malicious prosecution as well as negligent and/or intentional infliction of emotional distress.

c.      The **Third Claim**, constituting a violation of the Claimant's Civil and Constitutional rights occurred on **May 19, 2014** on Guy R. Brewer Avenue, between Archer and Jamaica Avenues, Jamaica, New York at approximately 2:32 p.m. At that time, the Claimant was issued a summons without reasonable or probable cause, in violation of his Civil and Constitutional Rights. In addition, Respondents violated the Claimant's rights to privacy under Federal and State Law, including those rights provided under the Federal Health Insurance Portability Act and the State laws concerning physician-patient privilege. The Claimant also asserts claims for intentional infliction of emotional distress, as well as false arrest, as well as malicious prosecution and abuse of process.

d.      The **Fourth Claim**, constituting a violation of the Claimant's Civil and Constitutional Rights to privacy, occurred between **May 19, 2014** and **June 26, 2014 [actual date unknown, said information is within the exclusive possession and control of Respondents]**. In addition, Respondents violated the Claimant's rights to privacy under Federal and State Law, including those rights provided under the Federal Health Insurance Portability Act and the State laws concerning physician-patient

-3-

privilege. The Claimant also asserts claims for defamation, slander, intentional infliction of emotional distress, intentional and wrongful interference with the physician-patient relationship.

e.  The **Fifth Claim**, constituting a violation of the Claimant's Civil and Constitutional rights occurred on **May 23, 2014** on 89th Avenue, between 165th and Merrick Boulevard, Jamaica, New York at approximately 9:30 a.m. At that time, the Claimant was arrested without reasonable or probable cause, in violation of his Civil and Constitutional Rights. The Claimant was also subjected to unreasonable and unnecessary strip search in public, to his great humiliation, in violation of his Civil and Constitutional Rights. The Claimant was also subjected to unreasonable and unnecessary force in violation of his Civil and Constitutional Rights. The Claimant also asserts State law claims for assault, battery, false arrest, false imprisonment, abuse of process, malicious prosecution as well Constitutional malicious prosecution.

f.  Upon information and belief, the **Sixth Claim**, constituting a violation of the Claimant's Civil and Constitutional is asserted that the aforementioned conduct by Respondents was wilfully in retaliation against the Claimant due to his family and conduct which had been by Respondents against the Claimant's brother, Wanji Webb on April 30, 2013 on 163rd Street between Hillside Avenue and 89th Avenue, Queens, New York.

3.  **The time when, the place where and the manner in which the claim arose were as follows:**

a.  The **First Claim** arose May 11, 2014, when Respondents City at approximately 7:37 p.m., in front of 164-01 89th Avenue, Jamaica, New York. At that time and place, Respondent P.O. JOHN DOE Nos. "1" to "3" [actual names unknown] grabbed, assaulted, battered the Claimant along with various other unknown POLICE OFFICERS. The Claimant was thereafter handcuffed Claimant and thrown into a Police Van without reasonable nor probable cause. Shortly thereafter, P.O. JOHN DOE No. "1" along SGT. "JOHN" BOYCE entered the Van, and assaulted and battered the Claimant while he was in the Van. Respondent Police Officers then drove the Claimant 102nd Precinct - during which time, Respondent SGT. CHANG was forcefully bending the Claimant's left hand, inducing grievous, excessive and unreasonable pain without reasonable or probable cause to do so. The Claimant was wrongfully charged with crimes which he had not committed, nor was there any reasonable nor probable cause that he committed those crimes.

-4-

b.  The **Second Claim** arose on **May 17, 2014** at approximately 1:59 p.m. the Claimant was operating his motor vehicle Northbound on 168th Street between Archer Avenue to 89th Avenue, in front of 166-40 89th Avenue, Jamaica, New York. During this time, Respondent SGT. HAMBURGER along with Respondent P.O. MARION, without reasonable nor probable cause, while operating a "paddy wagon" commenced following the Claimant along 168th Street, in Jamaica. The Claimant pulled over to allow Respondent Police Officers pass, and instead, stopped their vehicle along the Claimant's passenger's side door. Respondent Police Officers thereafter harassed the Claimant a traffic ticket for "double parking" his vehicle. Said summons was issued without reasonable or probable cause, in violation of the Claimant's rights.

c.  The **Third Claim** arose on **May 19, 2014** at approximately 2:32 p.m., while the Claimant was traveling Eastbound on Archer Avenue, Jamaica, New York. The Claimant commenced making a left turn at a solid green light on Guy R. Brewer Boulevard. At this time, Respondents Police Officer MARION and SGT. HAMBURGER, who were traveling in the opposite direction, Westbound on Archer Boulevard observed the Claimant's vehicle . Respondents made a "U" turn across traffic and the yellow line, put on the flashing lights in their vehicle, pursued and stopped the Claimant's vehicle. During the stop, Respondent SGT. "JOHN" HAMBURGER seized a bottle of prescription medication from the Claimant without reasonable or probable cause to do same. Upon information and belief, without the permission or the consent by the Claimant, Respondent SGT. "JOHN" HAMBURGER seized information from the Claimant, to wit: the name of the medication, the name of the Claimant's physician, as well as other private information from medication's label. The other officer, Respondent JOHN DOE No. "10" [with an identification shield number 955236] issued summonses to the Claimant, which summonses were without reasonable nor probable cause.

d.  The **Fourth Claim** arose between **May 19, 2014** and **June 26, 2014,** the actual date unknown, but in the exclusive knowledge and possession of Respondents, Respondent SGT. HAMBURGER contacted and spoke to the Claimant's treating physician on the telephone. The Claimant is advised that Respondent SGT. JOHN HAMBURGER told the Claimant's physician that the Claimant had been arrested for selling the medication the physician had previously prescribed to the Claimant. As a result of the aforementioned conduct, the Claimant's physician has indicated that he does not want to prescribe further medications for the Claimant, and has otherwise interfered with the Claimant's medical treatment, without reasonable nor probable cause or justification under the Constitution and Laws of the U.S. and the State of New York. Respondents' conduct further

constitute a wrongful and knowing breach of the Claimant's rights to physician confidentiality and those other rights guaranteed under the Health Insurance Portability Act ["HIPAA"]. Said conduct further constitutes defamation, slander, as well negligent and/or intentional infliction of emotional distress by Respondents.

e.    The **Fifth Claim** occurred on **May 23, 2014**, on 89th Avenue, between 165th and Merrick Boulevard, Jamaica, New York at approximately 9:30 a.m. At the aforementioned time, Respondents JOHN DOES Nos. "7", "8", "9" and "10", all dressed in plain clothes, seized and arrested and handcuffed the Claimant and put him into a Police "paddy wagon". While in the "paddy wagon, Respondents immediately commenced a strip search of the Claimant in full public view from the outside of the vehicle. One of Respondent Police Officers pulled down the Claimant's pants in public view, and performed an rectal cavity search. Respondents then told the Claimant to remove his sneakers and socks, and then searched them and the Claimant's feet. After completing this search, Respondents permitted the Claimant to put his clothes back on, and then drove the Claimant to the 103rd Precinct. The Claimant was thereafter brought to the Criminal Court, City of New York, Queens County, where he was arraigned on various, false charges. The aforementioned seizure, search and arrest was without reasonable nor probable cause, in violation of the Claimant's Civil and Constitutional Rights.

4.    **Items of damage or injuries claimed are (including dollar amounts):**

The Claimant, Kenji Webb, suffered both physical as well as emotional injuries due to Respondent's conduct.

**TOTAL AMOUNT CLAIMED:**
**KENJI WEBB    TWENTY MILLION ($20,000,000.00) DOLLARS**

Dated: New York, New York
    July 31, 2014

        Yours, etc.,
        MATTHEW A. KAUFMAN, ESQ.

        By:    Matthew A. Kaufman
        Attorney for Claimant
        225 Broadway - Suite 1606
        New York, NY 10007-3701
        Tel. No. (212) 619-2200
        My File No.    15,207.308

# **VERIFICATION**

STATE OF NEW YORK       )
                             : SS.:

COUNTY OF   N Y       )

**KENJI WEBB,** being duly sworn, depose and say:

     I am Claimant herein, I have read the foregoing Notice of Claim and know the contents

thereof; and the same are true to my own knowledge, except as to the matters therein stated to be

alleged upon information and belief, and as to those matters I believe it to be true.

                                                 KENJI WEBB

Sworn to before me the

\_\_\_ day of _____ 201\_

_____
Notary Public

MATTHEW A. KAUFMAN
Notary Public, State of New York
No. 02KA4723415
Qualified in Kings County
Commission Expires 12/31/2014

# EXHIBIT "C"

Fax:17186578198                    May 12 2014 10:49am  P002/004

AFFF590106381548

Q14629416

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR, COUNTY OF QUEENS

THE PEOPLE OF THE STATE OF NEW ~~~~ |        STATE OF NEW YORK
                                                ~UNTY OF QUEENS
              V.                  2014QN027614
KENJI WEBB (25Y)
                              DE

POLICE OFFICER ALICIA COMMISSO OF PATROL BORO QUEENS SOUTH, TAX REG#:
954660, BEING DULY SWORN, DEPOSES AND SAYS THAT BETWEEN MAY 11 2014
7:15PM AND MAY 11 2015 7:37PM, AT THE NE INTERSECTION OF 164 STREET AND
89 AVENUE, COUNTY OF QUEENS, STATE OF NEW YORK, THE DEFENDANT COMMITTED
THE OFFENSES OF:

PL 120.05-3 (EFF. 1-27-2014) [DF] ASSAULT IN THE SECOND DEGREE - (DNA
        SAMPLE REQUIRED UPON CONVICTION)
PL 195.05 [AM] OBSTRUCTING GOVERMENTAL ADMINISTRATION IN THE SECOND
        DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
PL 205.30 [AM] RESISTING ARREST - (DNA SAMPLE REQUIRED UPON
        CONVICTION)
VTL 1192-4 [AM] OPERATING MOTOR VEHICLE WHILE UNDER INFLUENCE OF
        ALCOHOL OR DRUGS
PL 221.05 [V] UNLAWFUL POSSESSION OF MARIHUANA
PL 240.20-1 [V] DISORDERLY CONDUCT

PL 120.05-3 (EFF. 1-27-2014) [DF] ASSAULT IN THE SECOND DEGREE - (DNA
SAMPLE REQUIRED UPON CONVICTION)
        --- WITH INTENT TO PREVENT A PEACE OFFICER, A POLICE OFFICER,
        PROSECUTOR AS DEFINED IN SUBDIVISION THIRTY-ONE OF SECTION 1.20
        OF THE CRIMINAL PROCEDURE LAW, REGISTERED NURSE, LICENSED
        PRACTICAL NURSE, SANITATION ENFORCEMENT AGENT, NEW YORK CITY
        SANITATION WORKER, A FIREFIGHTER, INCLUDING A FIREFIGHTER ACTING
        AS A PARAMEDIC OR EMERGENCY MEDICAL TECHNICIAN ADMINISTERING
        FIRST AID IN THE COURSE OF PERFORMANCE OF DUTY AS SUCH
        FIREFIGHTER, AN EMERGENCY MEDICAL SERVICE PARAMEDIC OR EMERGENCY
        MEDICAL SERVICE TECHNICIAN, OR MEDICAL OR RELATED PERSONNEL IN A
        HOSPITAL EMERGENCY DEPARTMENT, A CITY MARSHAL, A TRAFFIC
        ENFORCEMENT OFFICER OR TRAFFIC ENFORCEMENT AGENT, FROM PERFORMING
        A LAWFUL DUTY, BY MEANS INCLUDING RELEASING OR FAILING TO CONTROL
        AN ANIMAL UNDER CIRCUMSTANCES EVINCING THE ACTOR'S INTENT THAT
        THE ANIMAL OBSTRUCT THE LAWFUL ACTIVITY OF SUCH PEACE OFFICER,
        POLICE OFFICER, PROSECUTOR AS DEFINED IN SUBDIVISION THIRTY-ONE
        OF SECTION 1.20 OF THE CRIMINAL PROCEDURE LAW, REGISTERED NURSE,
        LICENSED PRACTICAL NURSE, SANITATION ENFORCEMENT AGENCY, NEW YORK
        CITY SANITATION WORKER, FIREFIGHTER, PARAMEDIC, TECHNICIAN, CITY
                                        05/12/2014   10:49AM (GMT-04:00)

AFFI0590106,581548

WEBB,KENJI  Q14629416

MARSAL, TRAFFIC ENFORCEMENT OFFICER OR TRAFFIC ENFORCEMENT AGENT,
CAUSED PHYSICAL INJURY TO SUCH PEACE OFFICER, POLICE OFFICER,
PROSECUTOR AS DEFINED IN SUBDIVISION THIRTY-ONE OF SECTION 1.20
OF THE CRIMINAL PROCEDURE LAW, REGISTERED NURSE, LICENSED
PRACTICAL NURSE, SANITATION ENFORCEMENT AGENT, NEW YORK CITY
SANITATION WORKER, FIREFIGHTER, PARAMEDIC, TECHNICIAN OR MEDICAL
OR RELATED PERSONNEL IN A HOSPITAL EMERGENCY DEPARTMENT, CITY
MARSHAL, TRAFFIC ENFORCEMENT OFFICER OR TRAFFIC ENFORCEMENT
AGENT;

PL 195.05 [AM] OBSTRUCTING GOVERMENTAL ADMINISTRATION IN THE SECOND
DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
--- A PERSON IS GUILTY OF OBSTRUCTING GOVERMENTAL ADMINISTRATION
WHEN HE INTENTIONALLY OBSTRUCTS, IMPAIRS, OR PERVERTS THE
ADMINISTRATION OF LAW OR OTHER GOVERNMENTAL FUNCTION OR PREVENTS
OR ATTEMPTS TO PREVENT A PUBLIC SERVENT FROM PERFORMING AN
OFFICIAL FUNCTION, BY MEANS OF INTIMIDATION, PHYSICAL FORCE OR
INTERFERENCE, OR BY MEANS OF ANY INDEPENDENTLY UNLAWFUL ACT, OR
BY MEANS OF INTERFERING, WHETHER OR NOT PHYSICAL FORCE IS
INVOLVED, WITH RADIO, TELEPHONE, TELEVISION OR OTHER
TELECOMMUNICATIONS SYSTEMS OWNED OR OPERATED BY THE STATE, OR A
COUNTY, CITY, TOWN, VILLAGE, FIRE DISTRICT OR EMERGENCY MEDICAL
SERVICE OR BY MEANS OF RELEASING A DANGEROUS ANIMAL UNDER
CIRCUMSTANCES EVINCING THE ACTOR'S INTENT THAT THE ANIMAL
OBSTRUCT GOVERMENTAL ADMINISTRATION.;

PL 205.30 [AM] RESISTING ARREST - (DNA SAMPLE REQUIRED UPON CONVICTION)
--- INTENTIONALLY PREVENT OR ATTEMPT TO PREVENT A POLICE OFFICER
OR A PEACE OFFICER FROM EFFECTING AN AUTHORIZED ARREST OF HIMSELF
OR ANOTHER PERSON;

VTL 1192-4 [AM] OPERATING MOTOR VEHICLE WHILE UNDER INFLUENCE OF
ALCOHOL OR DRUGS
--- OPERATE A MOTOR VEHICLE WHILE HIS ABILITY TO OPERATE SUCH
VEHICLE WAS IMPAIRED BY THE USE OF A DRUG AS DEFINED IN ARTICLE
THIRTY-ONE OF THE VEHICLE AND TRAFFIC LAW;

PL 221.05 [V] UNLAWFUL POSSESSION OF MARIHUANA
--- KNOWINGLY AND UNLAWFULLY POSSESS MARIHUANA;

PL 240.20-1 [V] DISORDERLY CONDUCT
--- WITH INTENT TO CAUSE PUBLIC INCONVENIENCE, ANNOYANCE OR
ALARM, OR RECKLESSLY CREATING A RISK THEREOF, ENGAGE IN FIGHTING
OR IN VIOLENT, TUMULTUOUS OR THREATENING BEHAVIOR.

THE ABOVE OFFENSES WERE COMMITTED AS FOLLOWS:

DEPONENT STATES THAT AT THE ABOVE MENTIONED DATE, TIME AND PLACE OF
OCCURRENCE, SHE OBSERVED THE DEFENDANT, KENJI WEBB, SITTING IN THE
DRIVERS SEAT OF A PARKED 1999 FORD WITH THE KEYS IN THE IGNITION AND THE
ENGINE RUNNING ON A PUBLIC ROAD WAY WITH A STRONG ODOR OF MARIJUANA
EMANATING OUT OF SAID VEHICLE.

APFD590:06581518

WEBB,KENJI  Q14629416

DEPONENT FURTHER STATES THAT SHE OBSERVED THE DEFENDANT TO HAVE
BLOODSHOT WATERY EYES, SLURRED SPEECH, A STRONG ODOR OF MARIJUANA ON HIS
BREATH AND THE DEFENDANT WAS UNSTEADY ON HIS FEET UPON EXITING SAID
VEHICLE.

DEPONENT FURTHER STATES THAT SHE OBSERVED LOOSE MARIJUANA ON THE FLOOR
OF THE FRONT DRIVER'S SIDE OF THE ABOVE MENTIONED VEHICLE.

DEPONENT FURTHER STATES THAT HER CONCLUSION THAT THE SUBSTANCE RECOVERED
IS: MARIJUANA IS BASED UPON HIS EXPERIENCE AS A POLICE OFFICER AND IN
HIS TRAINING IN THE IDENTIFICATION AND PACKAGING OF CONTROLLED
SUBSTANCES AND MARIJUANA.

DEPONENT FURTHER STATES THAT SHE OBSERVED THE DEFENDANT HEAD BUTT POLICE
OFFICER VILEGAS TAX 954406 ON THE MOUTH CAUSING SUBSTANTIAL PAIN, AND
SWELLING TO THE LIP.

DEPONENT FURTHER STATES THE DEFENDANT WAS YELLING, CURSING AND
SPITTING AT HER AND OFFICER VILEGAS CAUSING PEDESTRIANS TO REMOVE
THEIR CELLPHONES AND RECORD VIDEOS.

DEPONENT FURTHER STATES THAT THE ABOVE MENTIONED ACTIONS OF THE
DEFENDANT CAUSED PUBLIC ANNOYANCE AND ALARM.

DEPONENT FURTHER STATES THAT WHEN SHE WAS ATTEMPTING TO PLACE
HANDCUFFS ON THE DEFENDANT, THE DEFENDANT FLAILED HIS ARMS, TWISTED
HIS BODY, KICKED HIS LEGS, PUSHED THE DEPONENT, IN AN ATTEMPT TO AVOID
BEING HANDCUFFED AND PLACED UNDER ARREST.

DEPONENT FURTHER STATES THAT SHE WAS PRESENT WHEN A BLOOD TEST WAS
ADMINISTERED TO THE DEFENDANT AT QUEENS GENERAL HOSPITAL.

DEPONENT FURTHER STATES THAT THE DEFENDANT ADMITTED IN SUM AND SUBSTANCE
YEAH I SMOKED WEED.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE
PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT
TO SECTION 210.45 OF THE PENAL LAW

05/12/14

DATE        SIGNATURE

SWORN TO BEFORE ME ON THE

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF QUEENS: PART:**APN**

X

THE PEOPLE OF THE STATE OF NEW YORK

**SUPPORTING
DEPOSITION**

-against-

**DKT #: 2014QN027614**

**KENJI WEBB**

Defendant(s)

X

I, **P.O Bryant Villegas,** DEPOSE AND SAY THAT I HAVE READ THE ACCUSATORY INSTRUMENT FILED IN THE ABOVE-ENTITLED ACTION AND THAT THE FACTS THEREIN STATED TO BE ON INFORMATION FURNISHED BY ME ARE TRUE UPON MY PERSONAL KNOWLEDGE.

FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS "A" MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

7/15/14

Dated: _____ P.O _____
Bryant Villegas

---

DIRECTIONS:

Read the accusatory instrument carefully and then sign and date the supporting deposition and return them as quickly as possible to the District Attorney's Office of Queens County, 125-01 Queens Boulevard, Kew Gardens, NY 11415, personally or by mail. It is not necessary that you sign before a Judge, Police Officer, Notary Public or any witness. The form notice and signature there-under constitute a valid verification of this instrument.

# EXHIBIT "D"

06/23/2014  8:58PM  (GMT-04:00)

AFFIJ592728J584259

Q14632118

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR, COUNTY OF QUEENS

THE PEOPLE OF THE STATE OF NEW YORK

V.

KENJI WEBB (25Y)

DEFENDANT

STATE OF NEW YORK
COUNTY OF **2014QN030635**

POLICE OFFICER CRAIG MICHELS OF 103RD PRECINCT, TAX REG#: 939033,
BEING DULY SWORN, DEPOSES AND SAYS THAT ON OR ABOUT MAY 23 2014
BETWEEN 9:30AM AND 9:40AM, INSIDE OF 88-24 MERRICK BOULEVARD 6A, COUNTY
OF QUEENS, STATE OF NEW YORK, THE DEFENDANT COMMITTED THE OFFENSES OF:

PL 220.03 (9/18/11) [AM] CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE
       IN THE SEVENTH DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
PL 220.50-2 [AM] CRIMINALLY USING DRUG PARAPHERNALIA IN THE SECOND
       DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
PL 220.50-3 [AM] CRIMINALLY USING DRUG PARAPHERNALIA IN THE SECOND
       DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
PL 265.01-1 (EFF. 11/1/2008) [AM] CRIMINAL POSSESSION OF  A WEAPON IN
       THE FOURTH DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
PL 265.01-2 [AM] CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE
       - (DNA SAMPLE REQUIRED UPON CONVICTION)
AC 10-131 (B)(1) [UM] FIREARMS
AC 10-131-I(3) [UM] UNAUTHORIZED POSS. OF PISTOL AND/OR
       REVOLVER/AMMUNITION
PL 140.40 [BM] UNLAWFUL POSSESSION OF RADIO DEVICES - (DNA SAMPLE
       REQUIRED UPON CONVICTION)
PL 221.05 [V] UNLAWFUL POSSESSION OF MARIHUANA ← dismissed

PL 220.03 (9/18/11) [AM] CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE
IN THE SEVENTH DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
    --- KNOWINGLY AND UNLAWFULLY POSSESS A CONTROLLED SUBSTANCE;;

PL 220.50-2 [AM] CRIMINALLY USING DRUG PARAPHERNALIA IN THE SECOND
DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
    --- KNOWINGLY POSSESS OR SELL GELATINE CAPSULES, GLASSINE
ENVELOPES OR OTHER MATERIAL SUITABLE FOR PACKAGING INDIVIDUAL
QUANTITIES OF NARCOTIC DRUGS OR STIMULANTS UNDER CIRCUMSTANCES
EVINCING AN INTENT TO USE OR KNOWLEDGE THAT SOME PERSON INTENDED
TO USE, THE SAME FOR THE PURPOSE OF UNLAWFULLY MANUFACTURING,
PACKAGING OR DISPENSING A NARCOTIC DRUG OR STIMULANT;

PL 220.50-3 [AM] CRIMINALLY USING DRUG PARAPHERNALIA IN THE SECOND
DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)

AFFIDAVIT 02726/584239

WEBB,KENJI   Q14632116
 --- KNOWINGLY POSSESS OR SELL SCALES AND BALANCES USED OR
DESIGNED FOR THE PURPOSE OF WEIGHING OR MEASURING CONTROLLED
SUBSTANCES, UNDER CIRCUMSTANCES EVINCING AN INTENT TO USE, OR
UNDER CIRCUMSTANCES EVINCING KNOWLEDGE THAT SOME PERSON INTENDS
TO USE, THE SAME FOR PURPOSE OF UNLAWFULLY MANUFACTURING,
PACKAGING OR DISPENSING OF ANY NARCOTIC DRUG OR STIMULANT;

PL 265.01-1 (EFF. 11/1/2008) [AM] CRIMINAL POSSESSION OF  A WEAPON IN
THE FOURTH DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
 --- POSSESS ANY FIREARM, ELECTRONIC DART GUN, ELECTRONIC STUN
GUN, GRAVITY KNIFE, SWITCHBLADE KNIFE, PILUM BALLISTIC KNIFE,
METAL KNUCKLE KNIFE, CANE SWORD, BILLY, BLACKJACK, BLUDGEON,
PLASTIC KNUCKLES, METAL KNUCKLES, CHUKA STICK, SAND BAG,
SANDCLUB, WRIST-BRACE TYPE SLINGSHOT OR SLUNGSHOT, SHIRKEN OR
"KUNG FU STAR";

PL 265.01-2 [AM] CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE -
(DNA SAMPLE REQUIRED UPON CONVICTION)
 --- POSSESS A DAGGER, DANGEROUS KNIFE, DIRK, RAZOR, STILETTO,
IMITATION PISTOL, SHIRKEN OF KUNG FU STAR OR ANOTHER DANGEROUS OR
DEADLY INSTRUMENT OR WEAPON WITH INTENT TO USE THE SAME
UNLAWFULLY AGAINST ANOTHER PERSON;

AC 10-131 (B)(1) [UM] FIREARMS
 --- SELL, OFFER TO SELL OR HAVE IN SUCH PERSON'S POSSESSION ANY
AIR PISTOL OR AIR RIFLE OR SIMILAR INSTRUMENT IN WHICH THE
PROPELLING FORCE IS A SPRING OR AIR, EXCEPT THAT THE SALE OF SUCH
INSTRUMENTS IF ACCOMPANIED BY DELIVERY TO A POINT WITHOUT THE
CITY, AND POSSESSION FOR SUCH PURPOSE, SHALL NOT BE UNLAWFUL IF
SUCH PERSON SHALL HAVE SECURED AN ANNUAL LICENSE FROM THE POLICE
COMMISSIONER OF THE CITY AUTHORIZING SUCH SALE AND POSSESSION.;

AC 10-131-I(3) [UM] UNAUTHORIZED POSS. OF PISTOL AND/OR
REVOLVER/AMMUNITION
 --- POSSESS PISTOL OR REVOLVER AMMUNITION WITHIN THE CITY OF NEW
YORK AND  WHO IS NOT AUTHORIZED TO POSSESS A PISTOL OR REVOLVER
WITHIN THE CITY OF NEW YORK AND WHO IS NOT AN AUTHORIZED FIREARMS
DEALER.;

PL 140.40 [BM] UNLAWFUL POSSESSION OF RADIO DEVICES - (DNA SAMPLE
REQUIRED UPON CONVICTION)
 --- POSSESS A RADIO DEVICE WITH INTENT TO USE IT IN THE
COMMISSION OF ROBBERY, BURGLARY, LARCENY, GAMBLING OR A VIOLATION
OF ANY PROVISION OF SECTION 220.00 OF THE PENAL LAW;

PL 221.05 [V] UNLAWFUL POSSESSION OF MARIHUANA
 --- KNOWINGLY AND UNLAWFULLY POSSESS MARIHUANA.


THE ABOVE OFFENSES WERE COMMITTED AS FOLLOWS:

DEPONENT STATES THAT AT THE ABOVE MENTIONED DATE, TIME, AND PLACE OF
OCCURRENCE, PURSUANT TO A SEARCH WARRANT ISSUED BY THE HONORABLE JUDGE
ERNEST HART, OF QUEENS COUNTY CRIMINAL COURT, HE RECOVERED THREE

AFFI892726|584259

WEBB,KENJI Q14632116

ENVELOPES CONTAINING A QUANTITY OF HEROIN FROM THE HALLWAY CLOSET, TWO
PLASTIC BAGS CONTAINING A QUANTITY OF MARIJUANA FROM THE HALLWAY CLOSET,
ONE PAIR OF METAL KNUCKLES FROM THE HALLWAY CLOSET, TWO DIGITAL SCALES
AND FOURTEEN LARGE ZIPLOCK BAGS CONTAINING SEVERAL SMALLER ZIPLOCK
BAGS FROM THE HALLWAY CLOSET.

DEPONENT FURTHER STATES THAT HE RECOVERED ONE BOX FROM THE HALLWAY
CLOSET WHICH CONTAINED FORTY ONE (41) ROUNDS OF .32 CALIBER
AMMUNITION, NINETEEN (19) ROUNDS OF 9MM AMMUNITION, FORTY (40) ROUNDS OF
.38 CALIBER AMMUNITION, AND THIRTY TWO (32) ROUNDS OF .40 CALIBER
AMMUNITION.

DEPONENT FURTHER STATES THAT HE RECOVERED ONE POLICE SCANNER FROM THE
KITCHEN COUNTER AND ONE AIR PISTOL FROM THE REAR BEDROOM CLOSET.

DEPONENT FURTHER STATES THAT HE RECOVERED TWO PIECES OF MAIL FROM THE
REAR BEDROOM, EACH OF WHICH CONTAINED THE DEFENDANT'S NAME, KENJI
WEBB, AND THE ABOVE MENTIONED ADDRESS.

DEPONENT FURTHER STATES THAT HE OBSERVED THE DEFENDANT'S NEW YORK
STATE DRIVER'S LICENSE BEARING THE ABOVE MENTIONED ADDRESS.

DEPONENT FURTHER STATES THAT HIS CONCLUSION THAT SAID PISTOL IS AN AIR
PISTOL IS BASED UPON HIS TRAINING AND EXPERIENCE AND THE FACT THAT THE
DEPONENT ACTIVATED SAID PISTOL AND SAID PISTOL IS PROPELLED BY THE FORCE
OF AIR.

DEPONENT FURTHER STATES THAT HE IS INFORMED BY THE DEFENDANT THAT HE
IS NOT A LICENSED FIREARMS AND AMMUNITIONS DEALER.

DEPONENT FURTHER STATES THAT HIS CONCLUSION THAT THE SUBSTANCES
RECOVERED ARE HEROIN AND MARIJUANA IS BASED UPON HIS EXPERIENCE AS A
POLICE OFFICER AND IN HIS TRAINING IN THE IDENTIFICATION AND PACKAGING
OF CONTROLLED SUBSTANCES AND MARIJUANA.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE
PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT
TO SECTION 210.45 OF THE PENAL LAW

5/23/14

DATE        SIGNATURE

SWORN TO BEFORE ME ON THE
DAY OF


DATE        SIGNATURE